Good morning, Your Honors. If it may please the Court, my name is Brian Leighton. I represent the appellant in this matter, James C. Conrad, also known as J.C. Conrad, 26-year veteran of the Fresno Police Department, who was rudely arrested on January 14, 1998. Could I ask you a kind of a preliminary question? Why didn't you bring a Bivens action? Bivens action has to be brought within one year of the time of the arrest, and at that time I didn't represent him, and he was involved in the criminal trial. I see. Okay. Federal Torts Claims Act, for malicious prosecution, you have to be acquitted first. And in this case, obviously, after the government's 13-day case in chief, Judge Ishii found that no reasonable jury could find Mr. Conrad or any of the other four defendants guilty beyond a reasonable doubt. He granted the Rule 29 motion. But this is a very odd case to bring under the Federal Torts Claims Act. The Federal Torts Claims Act gave me a longer statute of limitations, and I was not involved representing Mr. Conrad in the criminal trial. I understand that. But whether you can fit your facts into a Federal Torts Claims Act, I think, is problematic. The Federal Torts Claims Act would allow us to pursue a federal government agent for malicious prosecution and false imprisonment with respect to delay in bringing him before the magistrate if a private person could be so charged in the state of California. The state of California outlaws false imprisonment, including delay in bringing someone to the magistrate, whether it's a private person or a law enforcement officer. Malicious prosecution in California also applies to private citizens as well as officers. So that's why the Federal Torts Claims Act was brought with respect to both of those issues. Do you have any cases that are analogous to the one you're bringing? There are a number of cases regarding – are you talking about the delay or are you talking about the malicious prosecution? I'm just talking about any cases under the Federal Torts Claims Act which involved the discretionary decisions of prosecutors, agents. Well, this isn't a discretionary function of a prosecutor. It is the nondiscretionary function of the IRS agent in this case who caused the arrest of Mr. Conrad was a case agent in the arrest of Mr. Conrad. And under the Federal Torts Claims Act, we can bring a claim for malicious prosecution and false imprisonment, including the delay in bringing him before the magistrate. I'm just asking if you have any cases. Well, there's whole chapters in Witkin regarding delay before the magistrate, the Section 445 Tenth Edition Torts Summary of California Law. I understand all that, but I was just wondering if anybody – This is kind of an unusual case, and I'll tell you why, is that for some reason, at least in the Eastern District of California in Fresno, where I was a long-time federal prosecutor, none of this would have happened then, where you would arrest somebody on a warrant on a stale investigation instead of summoning that person in. He's a law enforcement officer. He's not going to run. You arrest him at 2 o'clock in the afternoon, take him down to the federal building. And it's not like the federal building in San Francisco where you have 24 flights. He's housed 30 feet from the nearest available magistrate. They have the warrant. They have the complaint. Take him in before the nearest available magistrate as both California and federal law mandate that you do. No, IRS wants to interview him. He waves his memorandum of rights, still doesn't know why he's being charged with anything. Well, shoot. Oh, now it's after 5 o'clock. Let's take you to the jail. An officer in the jail without his pain medication because we have to recall that at the time of his arrest, he was out on medical leave from blowing out his hip driving a patrol car for the city of Fresno. Do they bring him over on Thursday, January 15th? Nope. Another 24 hours. The law, Rule 5A of the Federal Rules of Criminal Procedure, California law, California Constitution, the arresting person, whether it's an officer or not, the person arrested must be brought to the nearest available magistrate without unnecessary delay. And in the federal law, if you don't have a federal magistrate or a federal judge around, you take him to the nearest available judge authorized, which would include 25 county superior court judges who are two blocks away from the federal building. We have three judges full time in Fresno at this time of this incident, three magistrates all within 100 feet. They don't take him before the nearest available magistrate. He sits 44 and a half hours in jail when everybody knew he'd be out on his own recognizance. If he was arrested under a state warrant to have a statutory bail, he would have been out within a couple of hours. Let's keep him in jail because maybe we can get a confession out of him that he knows something about Fresno State basketball point shaving, which is what this investigation is about. It never went anywhere. The investigation was basically concluded the first week of January of 1997. They don't arrest him for a year later and don't take him to a magistrate. When you look at the affidavit in support of the arrest warrant by Agent Osuna and is spelled out in detail in my brief and also in our post trial findings of fact and conclusions of law, and we examine Miss Osuna during the civil trial in this case, there were so many misstatements to the magistrate to secure the arrest warrant. The other basically horn book, bedrock principle in the United States is we have to have magistrates that look at probable cause to make sure that there is probable cause because we don't want to leave that up to a law enforcement officer whose judgment is clouded by prejudice, bias, the idea to arrest someone. The feather in the IRS's cap is to arrest a cop. Every article that ever came out in the Fresno Bee, and there were a bazillion of them, lead with Mr. Conrad's photograph. He can't get a job in law enforcement anymore. He's done on that because he was indicted. It's embarrassing to read it. It's embarrassing to think that an agent could submit that to a magistrate for the magistrate to determine independently whether there's probable cause. When you mislead the magistrate, when you make misstatements, the magistrate cannot do their job. Well, wasn't there, there was a hearing in this, wasn't there in the district court, and weren't there findings that the district court found that Osuna did not lie? What the magistrate, what Judge Ishii said in the civil trial following the court trial, unfortunately we're not entitled to a jury trial in Tort Claims Act cases, was that because Assistant USA colors reviewed the affidavit and it looked okay to him, somehow that would give her immunity, that it wouldn't be lies because she wouldn't take a chance in actually lying because colors was going to look over the affidavit and did. Judge Ishii made the same statements with respect to her gratuitous inflammatory lies before the grand jury. And he says, well, since colors was asking her the question before the grand jury, she wouldn't have been intentionally trying to be deceptive because colors would have noticed it and corrected it. They even called colors at the trial in this case, which is another, I think, violation of due process for colors to remark what he thought Mr. Conrad's involvement was in this bookmaking organization. On cross-examination of Mr. Colors, the judge says he cannot, that colors, I could not go any further because Mr. Colors cannot insulate Linda Osuna, or the government now, from being deceptive or lying or deceiving the magistrate. At the end of the trial and in his decision, that's exactly what he did. He immunized Osuna because colors, who has immunity, supposedly concurred. Well, that's not the test under lying or deceiving the magistrate. It is, colors was not the affiant. Linda Osuna was the affiant. The rule on arrest is not colors to get him before the nearest available magistrate. It is arresting officer. So we have Judge Ishii refusing to allow me to cross-examine Mr. Colors with respect to the information in the affidavit, the lack of investigation, the lack of providing exculpatory information. I couldn't go there because as far as he was concerned, Colors could not insulate Linda Osuna. He ended up ruling that he could. I was deprived of cross-examination on that very topic. So what we have here is two critical issues in California, and the cases seem to be all over the map. You have Franks v. Delaware, and you have a Ninth Circuit case, Ely v. Butler, in this decision that talks about the lack of investigation, talks about the lack of candidness with a magistrate in securing, in that case, a search warrant, but the rules are the same on an arrest warrant because it is a magistrate's job to determine probable cause. And then you have other cases that stand for the proposition that exculpatory evidence need not be disclosed to the magistrate. Well, how can a magistrate do their job in determining whether or not there's probable cause, whether it's for a search or for an arrest, unless you tell the magistrate all the facts that you have? Now, obviously, I'm the first one to recognize if this was a fast-moving case and you worked on it for four days and there's drug busts and there's armed bank robberies and you have to act quickly to get the thug off the street, you may not want to check out some alibi that somebody may have had for this person if you have all the eyewitnesses, you have the fingerprints, you have all this stuff. This was not a rush. They started the investigation December 6, 1996, concluded supposedly October 3, 1997, which is false. It was concluded in January of 97. And they made the arrest five months after they said that they were done with the investigation, which is actually a year after they were done with the investigation. And so you don't tell the magistrate things like their theory was is that Mr. Conrad was an enforcer to the bookmaking operation, that he was a recruiter, he got people to bet within the organization, and that he is the one that ran the background checks on all of the betors, plural. Well, she had to admit in the trial there was one betor and that was their informant. Mr. Conrad ran one license plate on that one individual because he stuck out like a sore thumb. Any reasonable cop who sees a guy with a cowboy hat on walking into a sports bar in Fresno that is the home of judges, attorneys, doctors, lawyers, and he walks in there and he pushes his way in, he wants to start betting, I'd be suspicious too. He runs the guy. He finds out he's Parlier PD. He was fired from the Parlier Police Department. But in any event, but she says he ran the betors, she had to admit there was one, he ran plates of recruited betors, no evidence he recruited anyone. The only thing Mr. Conrad did at the bar watching a football game is he said to the informant, get your ass in and bet. It was a football pool. It's not bookmaking. But he's a recruiter for this gambling enterprise, this big point-shaving thing, which was never proven. And secondly, before you run out of time, I think we've got the drift of the probable cause issue. Can we come back to the warrant issue? Because you made a statement about the ready availability of the various magistrate or magistrate alternatives who could have arraigned him. You're trying to come within the discretionary function exception. What's the import of the fact that Rule 5 and the IRS rule that follows it says, without unnecessary delay. Does that not destroy the notion that there's an absence of discretion? Doesn't the rule itself embody discretion? Well, this isn't the park sign. This isn't the speed limit. Well, I think that I'm aware of. What I'm saying here is close. I mean, Fresno is just down the road from this. I know. I know. And I know what corner they're talking about. But the fact of the matter is, is that they're relying on discretionary function. Judge Ishii said it's discretionary as to when they bring someone before the magistrate as long as it's in within 48 hours. It's not discretionary when Rule 5A says shall be taken before the nearest available magistrate. Without unnecessary delay. The shall is clearly mandatory. What's the import of the without unnecessary delay in this matrix of cases we have to come within? Well, the saying shall without unnecessary delay, it's also like probable cause. There's wiggle room on probable cause. But if you don't have probable cause, you lose your warrant, can be a Bivens action, it can be a torts claims act. But in People v. Thompson, it was a California Supreme Court decision that talked about the unlawful delay or unreasonable delay under California law. And the California statutes and the California Constitution tracks basically Rule 5A. And it says you can take into account health considerations. There wasn't a health issue here. You can take in account you have to complete the arrest. The arrest is complete. He's down at the federal building at two thirty in the afternoon. He's already booked in the federal building. You can take into account transportation to court. He's in court. He's from here to there to Judge Snyder. You can allow time for the attorney to evaluate the case evidence only to determine the charges to be filed. The charges have already been filed. The complaint is issued based upon the arrest warrant that was secured the day before his arrest. No delay there. And you can complete the necessary clerical administrative tasks to prepare the formal pleading. The formal pleading was done the day before. Everything was there. We'd arrest people at four thirty in the afternoon. They were before the magistrate at five o'clock that afternoon. What do we make of the fact that there was a kind of a regularized way of holding arraignments Monday, Wednesday, Friday? Well, the government seems to be hanging their hat on the fact that the magistrates concocted a plan down there that they're going to have criminal arraignments on Monday, Wednesdays and Fridays at 11 o'clock. That would pick up most people within a reasonable time. It would. But the thing is, that rule didn't apply to the judges. We got three judges there, too. Secondly, the rule ignores I mean, that little administrative rule that they came up with. It wasn't the rule when I was there. That rule that they came up with ignores the law. You may want to save some time for your rebuttal. You're down to two minutes. Thank you. Good morning. May it please the court. Catherine Serna appearing on behalf of Appellee of the United States. I'd like to start just with addressing a couple of points made by counsel. The record demonstrates that there was no questioning after the initial interview on Wednesday. So there is no issue about whether this Conrad was held for the purpose of interrogation. Conrad was housed separate from the prison population. He wasn't mistreated. There's no evidence that the fact that Conrad was a police officer had any bearing whatsoever on his arrest or prosecution. And the trial ruling was much more detailed than counsel suggests. It was not just the prosecutor, but it was two other investigators that reviewed all of the evidence in the affidavit. Conrad basically criticizes the quality of the investigation, and these decisions are clearly protected by discretionary function. In addition to the trial court ruling, there were several other findings made regarding probable cause and the lack of lies. But I think I'll start with the summary judgment motion ruling. Appellant challenges, of course, the two rulings, the district court's grant of summary judgment, and then the district court's ruling in favor of the government on Conrad's malicious prosecution claim. That's the summary judgment ruling. The standard is de novo, but this Court may affirm on any ground supported by the record. The United States demonstrated that there was no tribal issue of material fact as a matter of law. Then the burden shifts to Conrad to produce evidence enough for a finding in his favor, and that's Matsushita and Anderson. Now, Conrad chose to sue under the Federal Tort Claims Act, which accepts from coverage claims based on performance of discretionary function. Excuse me, counsel. Could one of you just go stick your head out and tell them to keep it down outside, please? And on this motion for summary judgment, the United States presented the following undisputed facts. Conrad was arrested on a Wednesday because investigators believed Tuesdays were collection days for the suspected gambling organization, and so the arrests were made on Wednesday in hopes of seizing gambling monies. Then to ensure officer safety and to prevent flight risk, all of the arrests were made at approximately the same time. And the first arrest was made at the home and the search of the home made at that time. Then the next arrests were made at the public restaurant bar that was involved, the Elbow Room, where these – where the arrests were made after the lunch hour, and that was made – done to impose the most minimal disruption on a facility. And as a result of these considerations, plaintiff was arrested at 2.30 p.m. Now, as counsel alluded, the regularly scheduled times for arraignment were Monday, Wednesday, and Friday at 11 o'clock a.m. So is that a local rule that modifies the Rule 5 without unnecessary delay? It was a local policy in place by the magistrates, by the court of the Eastern District of California. So if somebody is unlucky enough to get caught after the Wednesday setting is being held, then they're stuck until Friday automatically? That is the effect. And so what is unnecessary delay in there for? Well, the unnecessary delay, of course, applies across the country. That's right. It applies in Fresno, doesn't it? Of course. Yes. So this is the notion of how the IRS agents and the prosecutors discharge their function without unnecessary delay? Well, those times, actually, Your Honor, were set by the Eastern District Court. Does that mean that's the only time they hear arraignments? No, those were the regularly scheduled times. Regularly scheduled, but was Judge Snyder, Magistrate Judge Snyder, in her office Wednesday afternoon, Thursday? I have no idea. Yeah, there's no evidence in the record on that. I have no idea. Well, counsel says, is it not true that any judge, state, including state judges, could have heard the, taken the plea? That is my understanding. Of course, it would require the prosecutor to take the defendant before a judge. So really, that would have to be the prosecutor to make that call, which, of course, conduct is completely protected by discretionary function. So what's the argument as to as soon as she was obligated as an investigator, wasn't she? She was obligated, and her obligation, I believe, would be to bring the defendant, request the arraignment, and, of course, it really is up to the prosecutor to put forth the arraignment. Well, was there any, what's the evidence that she discharged her function? Well, her function was to follow these rules, and she was told by Prosecutor Cullors that the defendant could only be arraigned at these particular times. She's working with Prosecutor Cullors. I don't see how she could go to a different prosecutor or a different attorney to have the defendant arraigned. And as the record establishes, the time of the arrest was clearly indicated by these considerations that I've mentioned. And the delay here was not unreasonable. It was 44 and a half hours. Well, it doesn't talk about unreasonable. It says that unnecessary delay. I'm trying to understand how the government gets away with imposing a structure that says we don't have to exercise any judgment here. We'll just go by what the magistrates have set up as their schedule. And then invoke the discretionary function exception, saying, well, it's a matter of judgment. It doesn't sound like there's a matter of judgment. It sounds as if the government's using the magistrate judges, setting a convenient time for most cases, and saying, well, we can abdicate anything else now. We'll just stick somebody in jail for 48 hours or under 48 hours because it just happened to come in at the wrong time. Well, the venue here was, of course, the Eastern District of California. So the prosecutors and, of course, the agents were subject to the court's rules. Well, the rules don't preclude bringing the defendant or the accused, who's not been convicted of anything, before a magistrate judge other than at those times. That's when the magistrate judges are available, I understand. But is that a – you're precluded? Is that what it says? No, it's not. The rule says you can't do it? Those are the standard times. But this is where the discretion comes in. It doesn't sound like it. Well, the discretion is to determine whether or not there are circumstances that require the request for a special arraignment. It sounds more like it's a default to what the schedule is without exercising any discretion whatsoever. Well, there could be exercise of discretion, and there may be. In this case, of course, there wasn't. But that was the decision. Okay. Is that the way it is in Sacramento as well as Fresno? I don't think so, but I don't really know because I don't practice criminal law. So there are only two applicable policies. Well, I'm sorry. The docket sheet shows you as an AUSA. I am an AUSA, but I only practice civil law. I see. Yeah. We're separate. I knew that, but I didn't think you were that separate. Pretty separate. Okay. And I've been in Sacramento for a couple of years, actually. I was in Fresno. I do know the rules in Fresno, and I know that at the time, these were the times for arraignment. So you do know a little bit about criminal law. A little bit, yes, just a little bit. Learned more on this case, though. So discretionary function exception is stated at 28 U.S.C. Section 2680A. It accepts from liability under the Tort Claims Act any claim based upon an act or omission of an employee of the government. I think we understand that. That was the whole predicate of my question. Okay. Got that. Well, the two, would you like to, the policies at issue here, as you've already pointed out, are Internal Revenue Manual 9447.7, providing a special agent makes a request, must bring the arrested person without. Must. Must. Must. That part of it is mandatory. It is mandatory. And then the discretionary aspect comes in here, without unnecessary delay, before the nearest available United States magistrate, judge, or other nearby officer. So the words there. It doesn't sound like she really did that, did she? So you've got to invoke it as a matter of generality, but not specifics, it sounds like. But your point is that she couldn't go in without a prosecutor. And if the prosecutor said we're going in on Friday, that was the end of the story? That does seem to be the practical end of the story. I don't see how she could have sought a different attorney to arraign Mr. Conrad. But there is record evidence that that's exactly what happened, that she said let's bring him in now, and the prosecutor said no. Well, the record demonstrates that the decision on when to arrest Mr. Conrad was made. He was arrested at 2.30, which, of course, is past the 11 o'clock time, and that Prosecutor Cullors told the agents, you can only have your defendant arraigned at 11 o'clock Monday, Wednesday, or Friday. So the discretion here is without unnecessary delay before the nearest available United States magistrate or other nearby judge. And then the other rule really at issue is Rule 5A, which has very similar language, take the arrested person without a necessary delay before the nearest available federal magistrate. The district court ruled that these guidelines do not define what is meant by the unreasonable delay or the available, and that the duty is not specific and mandatory. That's based on this Court's rulings in Kennewick, GATX, Airlog, Vickers, and Reed. GATX, Airlog, is particularly interesting because the term necessary actually appears in the applicable guideline there. And then the second prong is that the decision is based on considerations of public policy. And the public policy considerations here, that the Court likewise ruled that this was the type of decision based in policy relying on cases including Gashow, Sabow, Sabow, and this Court's ruling, Galbera. The type of policy considerations here were whether the particular defendant has needs or require a quicker arraignment, such as mental or physical considerations. Well, you're giving us in the abstract what you've told us as a matter of fact, is that they just advocated to the schedule and what they were told by the prosecutor. Well, they could, again. It doesn't sound like she was prepared under your scenario to do any of that analysis because she was going to defer to what the prosecutor told her. Well, in practical terms, that seems to be the case. I suppose she could have tried to compel the prosecutor to make a different decision, but in reality, it is the prosecutor's decision which is absolutely protected under discretionary function. In fact, it's not even actionable under the Tort Claims Act. But in the earlier summary judgment motions, the judges didn't agree with that argument, and so we went forward and had this ruling that's before the Court. Okay. Onto the trial, I guess. Well, I'll address the trial now if the Court has no more questions on the summary judgment at this time. I think we understand the argument. No, you don't have to use your entire time. Okay. Well, in the trial, the trial, of course, District Court found there was probable cause for Conrad's arrest and subsequent prosecution that Conrad failed to prove the malice and that Conrad failed to prove false or fraudulent statements. And for this standard, the appellant must show the findings were clearly erroneous. Of course, Conrad was charged under 18 U.S.C. Section 1505. And the reason he was charged was because he ran this Kletz check, which is California law enforcement telecommunications system check for the gambling organization on the basis of a suspected confidential informant, which, of course, Mr. Conrad admits. The District Court concluded that the agents had reasonable basis to believe that Conrad had run the Kletz inquiry, had passed along that information to the others in the organization, and that the investigation into gambling was hurt by this conduct. That was the findings of the Court. Next, the Court found there was an absence of malice. That's specifically found as fact, that there's no evidence that agents ---- This is all in your brief, isn't it? It is. Yeah. I don't think oral argument needs to just repeat everything that's in your brief. If you want to, if there's something we've missed or you've missed, it's not there. But we have read the brief. I don't think so, Your Honor. Okay. All right. Thank you. Thank you. With respect to the last point on the 18 U.S.C. Section 1505, obstruction of a federal investigation, this Court held in U.S. v. Price, which is in our brief, that it has three essential elements. Two of those elements include the fact that the target, Mr. Conrad in this case, knew that there was a proceeding before an agency of the United States. When he ran the clets, the first week of January, how did he know there was an IRS investigation? As Linda Osuna conveniently told the grand jury a year later, this was a sheriff's office investigation. I was only providing backup. I was providing cover in the elbow room bar as an undercover person. But it was an S.O. investigation. But Conrad is to know within 13 days after Morales, the informant, or Austin as they called him, entered the elbow room bar that there was an IRS investigation. Well, Conrad thought the guy was a plant for somebody. The evidence was that he called the lieutenant of the vice unit, the Fresno Police Department, and said, you've got something going on in the elbow room. If you do, the guy's burned. This was before he ever ran him. Richard Denise, who testified at the hearing, said, we don't got nothing going on. Yeah. But how does that prove that Osuna lied to the grand jury or to the U.S. attorney? No. Linda Osuna stated before the grand jury it wasn't an IRS investigation at all. It was an S.O. investigation. She later adopted it. But at the time this was going on, it was an S.O. investigation. The informant was S.O. And that he has to endeavor corruptly to obstruct that investigation. There's no evidence that he endeavored to corruptly obstruct a federal investigation that he knew about. The law is that he knew. Now, Ms. Cerna asked this court to pity poor Ms. Osuna because Cullors was the one that was responsible for arranging it before the magistrate, the arraignment. Let's make it quick. Okay. Out of time. The rule is the arresting officer to take them to the nearest available magistrate. You don't need a prosecutor to be there. And finally on this, the issue of the, I wasn't attacking the quality of the investigation. I was attacking the fact that exculpatory evidence was not brought before the magistrate. If Conrad is the big enforcer of this organization, he was the recruiter. They had the pen register. They had all the cell phone records. She did not disclose to the magistrate. There's not one phone call between Conrad and any of the other people. None. Zero zip. Okay. And other factors in my brief. Thank you very much. All right. Thank you. Counsel, thank you for your argument. The case argued is submitted.
judges: Goodwin, B. Fletcher, Fisher